**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CYNTHIA L. CAREY | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 25-5268 |
| | : | |
| SOCIETY HILL TOWERS OWNERS | : | |
| ASSOCIATION, BRETT SCIOLI, | : | |
| CAMCO MANAGEMENT COMPANY, | : | |
| and CHRISTOPHER MAUS | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **July 22, 2026**

A condominium owner sues her condominium owners association and its management company seeking damages arising from a series of billing issues over the past year seemingly becoming personal at times. She today claims the owners association and its management company did not disclose certain information to her concerning their expenses when she purchased the condominium from an unnamed person in 2019. She then more timely challenges 2025 fees and treatment different than other tenants. She broadly sues the owners association's general manager and governing councilmembers. She also sues the management company and its managing partner. The owners association and management company do not today seek to dismiss her claims under the. They (along with the individuals) move to dismiss the remaining claims. We agree the condominium owner does not plead a legal basis for claims beyond her Fair Housing Act, Pennsylvania Human Relations Act, and Uniform Condominium Act claims. We dismiss claims against individual council members and under a variety of inapplicable theories not directed to the condominium association or its management company. She may proceed on claims subject to review under the Fair Housing Act, the Pennsylvania Human Relations Act, and Uniform Condominium Act.

## I.    Alleged Facts

Cynthia L. Carey bought a condominium from a non-party seller at the Society Hill Towers on September 13, 2019.[1] The Society Hill Towers Owners Association gave her a resale certificate and closing papers before she signed.[2] The Association did not include information about the building's outdated plumbing and electrical systems, reserve amounts, proposed building expenses, accurate monthly charges, or budget information on the certificate.[3] Ms. Carey relied on the certificate in deciding to purchase her condominium.[4]

Ms. Carey signed closing papers believing the Association gave her complete and accurate information about all charges at closing almost seven years ago.[5] The Association through its agent CAMCO Management Company charged Ms. Carey two months of fees at the September 13, 2019 closing totaling $1,460 without prorating the September fees.[6] The Association collected two months of capital reserves totaling $1,406 and a seventy-five dollar "new account setup" fee.[7] The Association also charged her a "capital contribution" she paid before closing.[8]

### *The Association's and CAMCO's 2025 encounters with Ms. Carey.*

The Association and Ms. Carey's relationship deteriorated six years after closing. The Association sent Ms. Carey a letter on July 9, 2025 demanding she remove her car from the garage.[9] The Association threatened $500 daily pool fines and $100 daily garage fines, including a $1,500 pool fine, and claimed she owed $3,280.28.[10] CAMCO withdrew $269 from Ms. Carey's account for her July 2025 parking fee.[11] The Association sent Ms. Carey a second letter on August 1, 2025 repeating its threats and showing two different balances on two separate statements.[12] CAMCO then tried to withdraw $4,119.28 from her account on August 6, 2025 but she caught and stopped the withdrawal before CAMCO processed the transaction.[13] After the withdrawal attempt CAMCO sent her an August 7, 2025 statement requesting $4,119.28, including a $3,100 garage

fine, even though she paid $207.50 and her $269 August garage fee.[14] Ms. Carey sent the Association and CAMCO a check on August 8, 2025 but they did not cash it.[15] CAMCO requested $10,774.56 in a November 5, 2025 statement even though her account appeared fully paid.[16] CAMCO also "double-counted" pool and garage fees on the November 2025 statement.[17]

### The Association and CAMCO bill Ms. Carey for repairs she did not owe.

The Association and CAMCO billed Ms. Carey for HVAC repairs at an unpleaded time which the Association and CAMCO are responsible for paying.[18] The Association, CAMCO, General Manager Scioli, and Managing Partner Maus blamed her and her cat and demanded payment when she and her downstairs neighbor complained about damage to their HVAC systems.[19]

### The Association threatens Ms. Carey after she complains about discrimination.

The Association and CAMCO threatened to cut off Ms. Carey's access to the building garage, elevators, and entrance when she complained about her bills at another unpleaded time.[20] General Manager Scioli and Managing Partner Maus dismissed Ms. Carey's complaints about these threats with "sex-based condescension."[21] General Manager Scioli and male building staff approached Ms. Carey on three separate days asking her to leave the pool.[22] Managing Partner Maus threatened to sue her.[23] General Manager Scioli personally directed or participated in imposing amenity restrictions and repair costs and retaliating against her.[24] Managing Partner Maus personally directed or participated in false and misleading billing, account escalation, collection threats, resale-document preparation or transmission, and related management decisions carried out through CAMCO.[25]

*Other unpleaded female owners report similar treatment.*

The Association did not respond to other female Society Hill Towers condominium owners' service requests and dismissed their complaints.[26] One female condominium owner asserted the Association denied her service requests over multiple summers with "hostility and condescension" between 2021 and 2024.[27] Other female condominium owners asserted the Association threatened and intimidated them and entered their condominiums without notice at unpleaded times.[28] Male owners with similar amenity use and requests apparently did not have these problems.[29]

*The Association mismanages funds.*

The Association's budgets show "millions of dollars in [unaccounted] reserve funds."[30] The Association's governing Council did not produce records showing other building projects received those funds.[31] The Association's Council imposed "illegal special assessments."[32] The Association used reserve funds to cover operating deficits and to hide mismanagement of funds.[33]

*Ms. Carey sues the Association, CAMCO, and individuals.*

Ms. Carey now sues the Association and its General Manager Scioli, and CAMCO and its Managing Partner Maus for sex-based housing discrimination and interference, coercion, and intimidation under the Fair Housing Act and the Pennsylvania Human Relations Act.[34] Ms. Carey sues the Association and CAMCO for (1) violating the Pennsylvania Uniform Condominium Act and her self-defined Governing Documents regarding common-element maintenance, unlawful assessments, fees, and amenity restrictions; (2) unfair and deceptive practices under Pennsylvania's Unfair Trade Practices and Consumer Protection Law; and (3) breach of contract.[35]

But then she goes much further. Ms. Carey sues General Manager Scioli, Managing Partner Maus, and Association Council members Holz, Haus, Martorana, Moss, Siegel, Smith, and

4

Mitchell for willful misconduct and personal liability under the Uniform Condominium Act and participation theory.[36] Ms. Carey sues the Association, CAMCO, General Manager Scioli, Managing Partner Maus, and the Association's Council members for conspiracy to deprive her of equal protection based on her view there is a constitutional right to contract.[37] Ms. Carey sues the Association, CAMCO, General Manager Scioli, Managing Partner Maus, and all the Association's Council members for direct breach of duties owed to individual unit owners under the Uniform Condominium Act and Governing Documents.[38]

## II.    Analysis

The Association, CAMCO, General Manager Scioli, Managing Partner Maus, and Council members Holz, Haus, Martorana, Moss, Siegel, Smith, and Mitchell move to partially dismiss Ms. Carey's third amended Complaint.[39] The Association and CAMCO move to dismiss Ms. Carey's Trade Practices Law and breach of contract claims.[40] The Association, CAMCO, General Manager Scioli, Managing Partner Maus, and all Council members move to dismiss Ms. Carey's individual liability and participation claims and section 1985(3) sex-based conspiracy claims.[41] CAMCO, General Manager Scioli, Managing Partner Maus, and all Council members move to dismiss Ms. Carey's breach of duties owed to individual unit owners claim.[42] General Manager Scioli and Managing Partner Maus separately ask us to dismiss all personal liability claims against them, and CAMCO broadly asks us to dismiss all claims against them.[43]

The Association, CAMCO, General Manager Scioli, and Managing Partner Maus do not move to dismiss Ms. Carey's Fair Housing Act and Pennsylvania Human Relations Act claims against them. The Association and CAMCO do not move to dismiss Ms. Carey's Uniform Condominium Act claims against them.

5

We grant the motion in part and deny in part. Ms. Carey may proceed on her unchallenged Fair Housing Act and Pennsylvania Human Relations Act claims against the Association and its General Manager Scioli and CAMCO and its Managing Partner Maus. She may also proceed on her unchallenged Uniform Condominium Act claims against the Association and CAMCO.

**A.  We dismiss the Trade Practices Law claim against the Association and CAMCO.**

Ms. Carey alleges the Association and CAMCO violated the Pennsylvania Trade Practices Law because they engaged in "unfair or deceptive practices" in connection with the sale, assessment, and management of her condominium.[44] She alleges they misled and inconsistently communicated about amenity suspensions, fines, and balances.[45] She also alleges the Association and CAMCO omitted information in the resale certificate at closing.[46]

The Association counters it is "not a seller" as defined by the General Assembly.[47] The Association argues it did not engage in a "commercial transaction" with Ms. Carey and she cannot allege she purchased her condominium from the Association.[48] The Association argues condominium assessments are "statutory and contractual incidents of ownership," not "trade" or "commerce" within the meaning of the Trade Practices Law.[49] The Association argues the pleaded activities—collecting assessments, issuing disclosures, and administering common elements—are "governance functions," unrelated to Ms. Carey's purchase.[50] CAMCO argues Ms. Carey does not plead facts connecting CAMCO's conduct to Ms. Carey's condominium purchase.[51]

Ms. Carey responds she received resale and settlement materials "prepared or furnished" by the Association and its agents before closing.[52] She argues the Association did not include required information on the settlement materials and she relied on those materials in deciding to purchase her condominium.[53] She argues the Association's "not a seller" argument is too narrow because Pennsylvania law considers her condominium purchase as a "sale or distribution of

services, property, and things of value."[54] We agree with the Association and CAMCO and dismiss Ms. Carey's Trade Practices Law claim.

The General Assembly designed the Trade Practices Law to "protect the public from fraud and deceptive business practices."[55] The General Assembly included a "catch-all" provision in the Trade Practices Law allowing a person who "purchases or leases goods or services primarily for personal, family, or household purposes" who "suffers an ascertainable loss of money or property as a result of a method, act, or practice declared unlawful" to bring a private action.[56] The General Assembly defines "trade" and "commerce" as the "advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value."[57]

To state a private cause of action under the Trade Practices Law, Ms. Carey must sufficiently allege facts allowing us to plausibly infer: (1) she purchased or leased goods or services primarily for a personal, family, or household purpose; (2) she suffered an ascertainable loss of money or property; (3) the loss resulted from the use or employment by a vendor of a method, act, or practice declared unlawful by the Trade Practices Law; and (4) she justifiably relied on the alleged unfair or deceptive practice when making the purchasing decision.[58] Ms. Carey must establish she "suffered damages arising from the purchase or lease of goods or services."[59] The General Assembly does not define the term "purchase" and Pennsylvania courts have "generally taken a broad approach to what constitutes a sale or a purchaser."[60] Pennsylvania courts have defined a purchaser as "one that acquires property."[61] "Purchase" under the Trade Practices Law has been interpreted as "[t]o obtain in exchange for money or its equivalent."[62]

Ms. Carey did not purchase her condominium from the Association or CAMCO.[63] The General Assembly recognizes property as a covered interest under the Trade Practices Law.[64] But

7

Ms. Carey did not engage in "trade or commerce" with the Association when Ms. Carey purchased her condominium. The Association provided documents at closing Ms. Carey may have relied upon in making her decision to purchase her unit, but Ms. Carey did not buy her condominium from the Association. Ms. Carey's charges at closing and monthly fees are also not "purchases" as defined by Pennsylvania courts. Ms. Carey paid these charges to satisfy her obligations as a member of the Association, but not to obtain property in exchange for money. Ms. Carey did not plead sufficient facts allowing us to plausibly infer her claim. We dismiss her Trade Practices Law claim against the Association and CAMCO.

### B. We dismiss the individual liability claims under the Nonprofit Association Law against General Manager Scioli, Managing Partner Maus, and all Council members.

Ms. Carey alleges the Pennsylvania Uniform Unincorporated Nonprofit Association Law imposes liability on General Manager Scioli and the Council members as managers of the Association.[65] She also alleges General Manager Scioli, the Council members, and Managing Partner Maus are liable under a participation theory for personally directing or participating in the Association's and CAMCO's wrongful conduct.[66] General Manager Scioli, the Council members, and Managing Partner Maus argue the Nonprofit Association Law does not apply to the Association because the Association is governed by the Uniform Condominium Act.[67] They also argue Ms. Carey does not plead an underlying tort to sufficiently plead the participation theory.[68] Ms. Carey responds she pleads sufficient underlying misconduct to support both theories.[69] We find neither theory applies. We dismiss this claim.

### 1. The Nonprofit Association Law does not apply.

General Manager Scioli and the Council members argue we must dismiss Ms. Carey's claim because the Nonprofit Association Law does not apply to the Association.[70] They argue the

8

General Assembly expressly excludes the Association—and its managers—from liability under the Nonprofit Association Law because the Association is instead governed by the Uniform Condominium Act.[71] Ms. Carey responds even if the Association and its managers "later establish that some Nonprofit Association Law provisions are displaced . . . entity status does not bar liability for a person's own conduct."[72] We find the Nonprofit Association Law does not apply to the Association or General Manager Scioli, Managing Partner Maus, and the Council members and dismiss Ms. Carey's claim.

The General Assembly sets rules for unincorporated nonprofit associations and their managers through the Nonprofit Association Law. The General Assembly included a carve-out in section 9112(3) of the Nonprofit Association Law. The carve-out excludes a nonprofit organization "formed under any other statute that governs the organization and operation of unincorporated associations."[73] The General Assembly directly addresses personal liability for managers in section 9117(b).[74] The General Assembly preserves personal liability remedies against managers: "A person's status as a member or manager does not prevent or restrict law other than this chapter from imposing liability on the person or the nonprofit association because of the person's conduct."

Pennsylvania courts have not directly addressed how the General Assembly's section 9112(3) carve-out applies to condominium owners associations. We thus must predict how Pennsylvania courts would resolve the issue."[75] When construing a Pennsylvania statute we begin with its language.[76] We follow the statute's plain language if it is "clear and free from all ambiguity."[77] "Only when the words of a statute are ambiguous will [Pennsylvania courts] resort to other considerations to discern legislative intent."[78]

The General Assembly's language in section 9112(3) is clear and guides our analysis. The Association is an "organization formed under any other statute that governs the organization and

operation of unincorporated associations."[79] Initial members formed the Association under the Pennsylvania Unit Property Act of 1963.[80] The General Assembly enacted the Uniform Condominium Act to succeed the Unit Property Act.[81] The Uniform Condominium Act now governs the formation of condominium associations.[82] A condominium association formed under the Unit Property Act may adopt all provisions of the Uniform Condominium Act by amending its governing documents.[83] The General Assembly applies the Uniform Condominium Act to condominium associations formed before and after its enactment.[84]

The Association falls outside the General Assembly's definition of a nonprofit association. so the Nonprofit Association Law does not apply to the Association.[85] We dismiss Ms. Carey's individual liability claims against General Manager Scioli, Managing Partner Maus, and the Council members for this reason. But the General Assembly preserves liability for managers imposed by "law other than this chapter for a person's conduct."[86] Ms. Carey thus may still proceed against General Manager Scioli and Managing Partner Maus on her unchallenged Fair Housing Act and Pennsylvania Human Relations Act claims.

**2.  We do not apply the participation theory to show liability.**

We next turn to Ms. Carey's participation theory asking us to hold individuals liable on the statutory claims. General Manager Scioli, Managing Partner Maus, and the Council members argue Ms. Carey does not plead an underlying tort as required by Pennsylvania's participation theory of liability.[87] They argue Ms. Carey pleads statutory violations, rather than pleading a tort.[88] They argue allegedly violated a Pennsylvania statute is not itself a tort and does not satisfy participation theory pleading requirements.[89]

Ms. Carey responds she sufficiently pleads facts allowing us to plausibly infer her claim. She argues she pleads Trade Practices Law deceptive conduct, Uniform Condominium Act

10

violations, wrongful amenity restrictions, misleading billing, attempted unauthorized withdrawal, withholding of records, shifting of common-element costs, and discrimination-related conduct.[90] We find Ms. Carey does not plead sufficient facts allowing us to plausibly infer the participation theory applies to the statutory Trade Practices Act and Uniform Condominium Act claims.

Pennsylvania courts recognize the participation theory as a basis on which corporate actors can be liable for their own tortious conduct.[91] The participation theory is "not a cause of action in and of itself, but rather [is] a form of derivative liability."[92] Ms. Carey must allege (1) existence of tortious conduct; and (2) knowing participation in or personal direction of the tortious conduct by General Manager Scioli, Managing Partner Maus, and all named Council members to sufficiently plead participation liability.[93]

Ms. Carey does not plead a specific tort. She alleges "willful misconduct," "reckless disregard," and "participation" without connecting these labels to a recognized tort.[94] She alleges wrongful conduct: errors in billing, amenity restrictions, improper fines, and withholding required financial disclosures. Ms. Carey ties each item of alleged misconduct to the Association's Declaration and the Uniform Condominium Act. But she does not allege a common law tort.

Ms. Carey does not plead sufficient facts allowing us to plausibly infer the required tortious conduct for the participation theory. We dismiss Ms. Carey's individual liability claims against General Manager Scioli, the Council members, and Managing Partner Maus.

### C. We dismiss Ms. Carey's contract claim against the Association and CAMCO.

Ms. Carey alleges the Association's Governing Documents are enforceable under contract principles.[95] She alleges the Association breached the Governing Documents.[96] She alleges CAMCO directly participated in or implemented the Association's breaches of the Governing Documents.[97] The Association argues Ms. Carey does not identify a specific, violated contract

11

provision.[98] CAMCO argues it is not a party to the agreements and does not have privity with Ms. Carey.[99]

Ms. Carey responds she identifies the Association's "Declaration, Code and Regulations, resale materials, deed and settlement documents, and UCA provisions governing common elements, assessments, records, and resale disclosures."[100] Ms. Carey argues the Association's Governing Documents are enforceable under contract principles.[101] She argues she identifies breaches: incomplete resale documents, overcharges, amenities restrictions, HVAC repair cost-shifting, and withholding financial records.[102] Ms. Carey argues she alleges CAMCO is the Association's delegated agent.[103] But she does not directly address CAMCO's privity argument.[104] She asks us to allow her claim to proceed against the Association for CAMCO's "delegated acts" if we dismiss her claim against CAMCO.[105] We find neither the Association nor CAMCO breached an enforceable contract and dismiss these claims.

Pennsylvania courts "may apply principles related to contract law" to test whether a housing association declaration is an enforceable contract.[106] But we have not yet found an opinion finding a housing declaration is an enforceable contract. Ms. Carey does not cite contrary authority.

A breach of contract claim under Pennsylvania law requires Ms. Carey to plead: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and (3) resultant damages."[107] To establish the existence of an enforceable contract, Ms. Carey must allege (1) both parties manifested an intention to be bound by the agreement, (2) the terms of the agreement are sufficiently definite, and (3) consideration.[108] The terms of the agreement are sufficiently definite, or reasonably certain, "if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."[109] A breach of a contract is "the nonperformance of a duty imposed by a contract between parties."[110] Pennsylvania law requires privity for a breach of contract

12

claim.[111] Fundamental contract law requires "one cannot be liable for breach of contract unless one is a party to that contract."[112]

Ms. Carey does not plead sufficient facts allowing us to plausibly infer the Governing Documents created a contract with the Association giving rise to her breach of contract claims. Ms. Carey alleges the Association breached a contract with her when it failed to disclose information before closing, overcharged her at settlement, suspended her access to the pool, garage, and elevator, and shifted HVAC repair costs to her.[113] But Ms. Carey does not identify a specific term or provision in the Governing Documents where the Association promised to avoid this conduct. Ms. Carey does not plead sufficient facts allowing us to plausibly infer the Governing Documents created a contract with the Association. We dismiss her breach of contract claim against the Association.

Ms. Carey also does not plead sufficient facts allowing us to plausibly infer her breach of contract claim against CAMCO. CAMCO is not a party to the agreements and Ms. Carey has not sufficiently pleaded a valid contract with the Association or CAMCO. We dismiss Ms. Carey's breach of contract claim against CAMCO. We also conclude the Association and CAMCO did not breach a duty to disclose or an implied covenant of good faith and fair dealing.[114]

**D.  We dismiss Ms. Carey's section 1985(3) conspiracy claim.**

Ms. Carey pleads a section 1985(3) claim in the alternative.[115] She also argues she sufficiently pleads facts showing "sex-based animus."[116] Ms. Carey alleges the Association, CAMCO, General Manager Scioli, Managing Partner Maus, and the Council members "conspired, as private actors, with sex-based animus," to deprive her of the "equal right to contract."[117]

The Association, CAMCO, General Manager Scioli, Managing Partner Maus, and the Council members argue the "right to contract" is not a fundamental constitutional right.[118] They

13

argue disputes over contractual relations, property management, and association enforcement "do not supply the type of clearly defined federal right required" for a section 1985(3) conspiracy claim.[119] Ms. Carey responds we should not dismiss her claim with prejudice.[120] She asks us to grant her leave to replead her claim using the "federal housing and equal protection predicates."[121] She does not allege a clearly defined federal right and we dismiss her civil rights conspiracy claim without prejudice.

The Supreme Court instructs us Congress through section 1985(3) allows damages to persons injured by conspiracies to deprive them of the equal protection of the laws.[122] Congress mandates we impose liability on two or more persons who "conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws."[123]

The Supreme Court made clear what Ms. Carey must allege to sufficiently plead a section 1985(3) claim: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States."[124] The Supreme Court once considered "liberty of contract" a component of substantive due process. But the Supreme Court rejected freedom of contract as a constitutional right almost ninety years ago.[125]

Ms. Carey does not allege an underlying federal right. Ms. Carey grounds her claim in the "fundamental right to contract."[126] We cannot plausibly infer Ms. Carey's section 1985(3) claim with the fundamental right of contract as her pleaded underlying right. There is no such underlying right. Ms. Carey amended her Complaint three times without sufficiently pleading an underlying federal right.[127]

We deny Ms. Carey leave to replead and dismiss her section 1985(3) claim without prejudice. She does not plead a civil rights claim.

### E. We dismiss Ms. Carey's breach of duties claim against CAMCO, General Manager Scioli, Managing Partner Maus, and the Council members.

Ms. Carey alleges the Association, CAMCO, General Manager Scioli, Managing Partner Maus, and the Council members owe direct duties to Ms. Carey under the Uniform Condominium Act and the Governing Documents.[128] CAMCO, General Manager Scioli, Managing Partner Maus, and all Council members argue section 3311(a)(2)(i) of the Act requires Ms. Carey to bring this claim against the Association only.[129] Ms. Carey argues section 3311 does not bar CAMCO's independent liability and does not "eliminate personal liability for willful misconduct or participation."[130] We dismiss this claim as to CAMCO, General Manager Scioli, Managing Partner Maus, and the Council members.

The General Assembly defined the tort and contract liability for the Association under the Act.[131] Ms. Carey's claim alleges a wrong by the Association and its agents and employees. The General Assembly requires this type of action "shall be brought against the Association."[132]

The Association is the sole proper named party allegedly responsible for this claim. Ms. Carey's breach of duties owed to individual unit owners claims against CAMCO, General Manager Scioli, Managing Partner Maus, and the Council members fail as a matter of law. The General Assembly requires each wrong Ms. Carey alleges—improper charges, failing to maintain and repair common elements, withholding required financial disclosures, selectively enforcing rules and restricting amenities, and engaging in willful misconduct—to "be brought against the Association."[133]

We dismiss Ms. Carey's claim for breach of duties owed to individual unit owners against CAMCO, General Manager Scioli, Managing Partner Maus, and the Council members.

15

**F. We deny General Manager Scioli's and Managing Partner Maus's motion to dismiss all claims against them.**

Ms. Carey brings personal liability claims against General Manager Scioli and Managing Partner Maus. General Manager Scioli and Managing Partner Maus argue Ms. Carey sues them based on their titles and roles and improperly group pleads.[134] Ms. Carey responds she pleads "specific actor-based conduct."[135] We deny the motion because General Manager Scioli and Managing Partner Maus do not challenge Ms. Carey's Fair Housing Act and Pennsylvania Human Relations Act claims against them. We dismissed the remaining claims.

Managing Partner Maus argues Ms. Carey does not identify a specific act personally taken by him, no instruction he issued, no decision he made, and no communication he directed to Ms. Carey. General Manager Scioli argues Ms. Carey's allegations involve "routine management activity undertaken solely on behalf of the Association." Ms. Carey counters she pleads "specific actor-based conduct."[136] She argues she alleges General Manager Scioli and Managing Partner Maus "personally directed or participated" in the alleged conduct violative of the Fair Housing Act and Pennsylvania Human Relations Act.[137] The Council members do not raise an argument why we should dismiss them from all claims.

We deny the motion as to General Manager Scioli and Managing Partner Maus. Ms. Carey brings Fair Housing Act and Pennsylvania Human Relations Act claims against General Manager Scioli and Managing Partner Maus. General Manager Scioli and Managing Partner Maus do not challenge those claims. We deny their motion to the extent they ask us to dismiss them from all claims. But no claims against the Council members may proceed.

16

**G. We deny CAMCO's motion to dismiss the Fair Housing Act, Human Relations Act, and Uniform Condominium Act claims against it.**

Ms. Carey alleges CAMCO is the Association's delegated agent for owner-facing financial administration, resale-document transmission, account administration, and enforcement.[138] CAMCO argues we should dismiss all claims against it because Ms. Carey only alleges CAMCO acted as the Association's managing agent and pleads no facts showing CAMCO "engaged in independent misconduct or acted outside the scope of its agency relationship."[139] Ms. Carey argues CAMCO's alleged conduct included "direct communication and billing" directed to her in connection with her "home, assessments, fines, and account."[140] She argues CAMCO is liable for its own "deceptive billing and account practices."[141] We deny CAMCO's motion.

Ms. Carey brings multiple claims against CAMCO. CAMCO did not challenge Ms. Carey's Fair Housing Act, Pennsylvania Human Relations Act, and Uniform Condominium Act claims against it. We deny CAMCO's motion to the extent it asks us to dismiss it from Ms. Carey's Fair Housing Act, Pennsylvania Human Relations Act, and Uniform Condominium Act claims.

## III.    Conclusion

We grant in part and deny in part Defendants' partial motion to dismiss. We dismiss Ms. Carey's Trade Practices Law, individual liability, breach of contract, and section 1985(3) conspiracy claims. We dismiss Ms. Carey's breach of duties owed to individual unit owners claim against CAMCO, General Manager Scioli, Managing Partner Maus, and the Council members, but not against the Association. We dismiss all claims against the Council members. Ms. Carey may proceed on her pleaded Fair Housing Act, Pennsylvania Human Relations Act, and Uniform Condominium Act claims.

---

[1] ECF 25 ¶ 21.

[2] *Id*.

---

[3] *Id.* ¶¶ 21(a)–(d).

[4] *Id.* ¶¶ 22, 96.

[5] *Id.* ¶ 22.

[6] The Association hired CAMCO Management Company as its delegated agent for "owner-facing financial administration" responsible for "resale-document transmission, account administration, and enforcement." *Id.* ¶¶ 22, 117, 135. Co-defendant Christopher Maus is the managing partner and President of CAMCO. *Id.* ¶ 13.

[7] *Id.* ¶¶ 22(b)–(c).

[8] *Id.* ¶ 22(d).

[9] *Id.* ¶ 24(a).

[10] *Id.*

[11] *Id.* ¶ 25(a)

[12] *Id.* ¶ 24(b).

[13] *Id.* ¶ 25(b).

[14] *Id.* ¶ 25(c).

[15] *Id.* ¶ 23(c).

[16] *Id.* ¶ 23(b).

[17] *Id.*

[18] *Id.* ¶ 26.

[19] *Id.* ¶¶ 26, 70–71.

[20] *Id.* ¶ 61.

[21] *Id.*

[22] *Id.* ¶¶ 29(f), 62; *see also id.* ¶ 29(f) n.7 (alleging a male Society Hill Towers employee, the male head of security, and General Manager Scioli asked her to leave the pool in 2025 and alleging she used the pool for two more days and received similar treatment on both days).

[23] *Id.* ¶ 62.

[24] *Id.* ¶¶ 121, 125.

[25] *Id.*

[26] *Id.* ¶¶ 27(a)–(d)

[27] *Id.*

[28] *Id.*

[29] *Id.* ¶¶ 28, 28(a).

[30] *Id.* ¶ 32.

[31] The Association's Council is a board of individuals who manage the Association's business operations. *Id.* ¶ 3.

[32] *Id.* ¶ 33.

[33] *Id.* ¶ 34.

[34] *Id.* ¶¶ 37–66.

[35] *Id.* ¶¶ 67–106, 130–139. Ms. Carey seemingly defines "Governing Documents" as the Association's Declaration, Bylaws, and Code and Regulations. She alleges the Governing Documents allocate responsibility for common-element maintenance, assessments, amenity access, and owner voting and records rights. *See id.* ¶ 17.

[36] *Id.* ¶¶ 107–129; The Pennsylvania Uniform Unincorporated Nonprofit Association Law governs unincorporated nonprofit associations in Pennsylvania. 15 Pa. Cons. Stat. §§ 9101–9136. Ms. Carey alleges the Association qualifies as an unincorporated Pennsylvania association of unit owners and the Nonprofit Association Law defines the Association as a legal entity. ECF 25 ¶ 108.

[37] ECF 25 ¶¶ 140–154.

[38] *Id.* ¶¶ 155–167.

[39] ECF 26. The Association, General Manager Scioli, the Association's Council members, CAMCO, and Managing Partner Maus move to partially dismiss for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6). Ms. Carey must plead a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint under the plausibility pleading standard. *Zanetich v. Wal-Mart Stores East, Inc.*, 123 F.4th 128, 138 (3d Cir. 2024). A plaintiff must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "'Plausibly' does not mean 'probably,' but 'it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Smith &*

19

*Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (quoting *Iqbal*, 556 U.S. at 678). A pleading offering "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

[40] ECF 26 at 15–17, 20–23.

[41] *Id*. at 17–20, 23–26.

[42] *Id*. at 26–28.

[43] *Id*. at 28–31.

[44] ECF 25 ¶¶ 21(a)–(d), 95.

[45] *Id*.

[46] *Id*.

[47] ECF 26 at 16–17.

[48] *Id*. at 16.

[49] *Id*. at 17.

[50] *Id*.

[51] *Id.* at 15–16.

[52] ECF 29 at 2, 4.

[53] *Id*. at 3–4. Ms. Carey alleges the Association did not include information required under section 3407(b) of the Uniform Condominium Act. *Id.* 95–96. The General Assembly requires "the Association within ten days after a request by a unit owner, shall furnish a certificate containing the information and copies of documents necessary to enable the unit owner to comply with this section." 68 Pa. Cons. Stat. § 3407(b).

[54] ECF 29 at 4 (citing 73 Pa. Cons. Stat. § 201-2(3)).

[55] *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 497 (3d Cir. 2013) (quoting *Gardner v. State Farm Fire & Cas. Co.,* 544 F.3d 553, 564 (3d Cir. 2008)).

[56] 73 Pa. Cons. Stat. § 201-9.2(a).

[57] 73 Pa. Cons. Stat. § 201-2(3).

[58] *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021); 73 Pa. Cons. Stat. §§ 201-9.2(a), 201-8.

[59] *Duffy v. Laws. Title Ins. Co.*, 972 F. Supp. 2d 683, 689 (E.D. Pa. 2013) (citing *Keller v. Volkswagen of Am., Inc.,* 733 A.2d 642, 646 (Pa. Super. Ct. 1999)).

[60] *Id.*

[61] *Id*. at 692 (citing *DeFazio v. Gregory*, 836 A.2d 935, 939 (Pa. Super. Ct. 2003)).

[62] *Gottlieb v. Tropicana Hotel & Casino*, 109 F. Supp. 2d 324, 331 (E.D. Pa. 2000).

[63] *See* ECF 25-3.

[64] 73 Pa. Cons. Stat. § 201-2(3).

[65] ECF 25 ¶¶ 108–111, 114, 119.

[66] *Id*. ¶¶ 115–117.

[67] ECF 26 at 18–19.

[68] *Id*. at 19–20.

[69] ECF 29 at 5–6.

[70] ECF 26 at 18–19.

[71] *See id*. at 18–19; *see also* 15 Pa. Cons. Stat. § 9112.

[72] ECF 29 at 6; *see also* 15 Pa. Cons. Stat. § 9117(b).

[73] 15 Pa. Cons. Stat. § 9112(3).

[74] *See* 15 Pa. Cons. Stat. § 9117(b).

[75] *Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, 879 F.3d 79, 84 (3d Cir. 2018) (quoting *In re Energy Future Holdings Corp.,* 842 F.3d 247, 253–54 (3d Cir. 2016)).

[76] *See Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 187 (3d Cir. 2021) (citing *Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 232 (3d Cir. 1992)); *see also Roverano v. John Crane, Inc.*, 226 A.3d 526, 535 (Pa. 2020) (citing 1 Pa. Cons. Stat. § 1921(a)).

[77] 1 Pa. Cons. Stat. § 1921(b).

[78] *Phila. Ent. & Dev. Partners LP v. Dep't of Revenue*, 860 F. App'x 25, 28 (3d Cir. 2021) (quoting *Johnson v. Phelan Hallinan & Schmieg, LLP*, 235 A.3d 1092, 1097 (Pa. 2020)).

[79] *See* 15 Pa. Cons. Stat. § 9112(3).

[80] *See* ECF 25-3. The Association's Declaration is filed under the Unit Property Act of July 3, 1963, P.L. 196, No. 117 (68 Pa. Stat. Ann. § 700.101 et seq.).

[81] *See* 68 Pa. Cons. Stat. § 3102(b): The Unit Property Act "do[es] not apply to condominiums created after the effective date" of the Uniform Condominium Act.

[82] *See* 68 Pa. Cons. Stat. § 3201: A condominium may be created under the Uniform Condominium Act "only by recording a declaration executed, in the same manner as a deed, by all persons whose interests in the real estate will be conveyed to unit owners . . . ."

[83] *See* 68 Pa. Cons. Stat. § 3102(b). A condominium created under the Unit Property Act "may be made subject to all of the provisions of this subpart in lieu of the provisions of the Unit Property Act" by amending its declaration, code of regulations, and declaration plan, "without in any way terminating the condominium status of the property."

[84] *See* 68 Pa. Cons. Stat. §§ 3102, 3201. The General Assembly applies the Uniform Condominium Act to condominiums created after and before its effective date. The General Assembly's sections "apply to all condominiums created in this Commonwealth before the effective date" of the Uniform Condominium Act. *Id.* § 3102(a), (a.1).

[85] *See* 15 Pa. Cons. Stat. § 9112(3).

[86] *See* 15 Pa. Cons. Stat. § 9117(b).

[87] ECF 26 at 19–20.

[88] *Id.*

[89] *Id.*

[90] ECF 29 at 5.

[91] *Aldorasi v. Crossroads Hosp. & Mgmt. Co., LLC*, 344 F. Supp. 3d 814, 822 (E.D. Pa. 2018) (citing *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86, 89 n.5 (1983)).

[92] *In re E. Continuous Forms, Inc.*, 302 B.R. 320, 343 (Bankr. E.D. Pa. 2003); *see also In re Grejda*, Nos. 06-476, 06-522, 2007 WL 2792908, at *11 (W.D. Pa. Sept. 21, 2007) (explaining the participation theory imposes liability "arising from some other wrongful act and cannot be used to create liability where it does not otherwise exist.").

[93] *Foster v. Attias*, Nos. 18-4853, 19-866, 2020 WL 5439360, at *6 (E.D. Pa. Sept. 10, 2020) (quoting *Streamline Bus. Grp., LLC v. Vidible, Inc.*, No. 14-1433, 2016 WL 3523033, at *4 (E.D. Pa. June 27, 2016)).

[94] ECF 25 ¶¶ 122–123, 125–126.

[95] *Id.* ¶¶ 131–133.

[96] *Id.* ¶¶ 136–137.

[97] *Id.* ¶ 135.

[98] ECF 26 at 21.

[99] *Id.* at 22.

[100] *Id.*

[101] ECF 29 at 6–7.

[102] *Id.* at 7.

[103] *Id.*

[104] *Id.* Ms. Carey "acknowledges Defendants' privity argument. She argues "dismissal with prejudice is premature" because she alleges CAMCO is the Association's "delegated agent. for owner-facing contractual performance: resale-document transmission, account administration billing, and enforcement communications." *See Id.;* ECF 25 ¶¶ 94–100, 135.

[105] *Id.* at 8.

[106] *MetroClub Condo. Ass'n v. 201-59 N. Eighth St. Assocs., L.P.*, 47 A.3d 137, 145 (Pa. Super. Ct. 2012); *see also Country Classics at Morgan Hill Homeowners' Ass'n, Inc. v. Country Classics at Morgan Hill, LLC*, 780 F. Supp. 2d 367, 374 (E.D. Pa. 2011) (observing Pennsylvania courts examine condominium declarations under the "umbrella of general contract law"). Judge Bender found condominium association failed to establish "three basic elements" of an enforceable contract: a mutual understanding, consideration, and sufficiently specific terms. *See MetroClub Condo. Ass'n*, 47 A.3d at 145 (citing *Helpin v. Trs. of Univ. of Pennsylvania*, 969 A.2d 601, 610–611 (Pa. Super. Ct. 2009).

[107] *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

[108] *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) (citing *ATACS Corp. v. Trans World Commc'n, Inc.,* 155 F.3d 659, 666 (3d Cir. 1998)).

[109] *Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d 459, 489 (E.D. Pa. 2018) (quoting Restatement (Second) of Contracts § 33 (1981)).

[110] *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 168 (3d Cir. 2014) (quoting *Widmer Eng'g, Inc. v. Dufalla*, 837 A.2d 459, 467–68 (Pa. Super. Ct. 2003)).

[111] *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 486 (E.D. Pa. 2016).

[112] *Id.* (citing *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991), *aff'd*, 618 A.2d 395 (Pa. 1993)).

23

[113] ECF 25 ¶¶ 21–26.

[114] Our Court of Appeals instructs "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 170 (3d Cir. 2013) (citing *Kaplan v. Cablevision of PA, Inc.*, 671 A.2d 716, 722 (Pa. Super. Ct. 1996) (quoting Restatement (Second) of Contracts, § 205) (internal quotation marks omitted)). But the duty of good faith and fair dealing is "not limitless," and there must be some relationship to the provisions of the contract itself to invoke the duty of good faith. *Id.* Because we find Ms. Carey does not have a contract with the Association or CAMCO, we conclude the Association and CAMCO did not breach a duty to disclose or an implied covenant of good faith and fair dealing.

[115] ECF 25 ¶¶ 141–154.

[116] *Id.*

[117] *Id.* ¶ 149.

[118] ECF 26 at 23–24.

[119] *Id.* at 24.

[120] ECF 29 at 9.

[121] *Id.*

[122] *Ziglar v. Abbasi*, 582 U.S. 120, 126 (2017).

[123] *Id.* at 150 (quoting 42 U.S.C. § 1985(3)).

[124] *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102–03 (1971)).

[125] *W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 391 (1937).

[126] ECF 25 ¶¶ 141–154.

[127] *See* ECF 1, ECF 8, ECF 16.

[128] ECF 25 ¶¶ 156–166.

[129] ECF 26 at 26–28.

[130] ECF 29 at 10.

[131] *See* 68 Pa. Cons. Stat. § 3311(a)(2)(i).

24

---

[132] *Id*. Judge Joyner found the language of the Uniform Condominium Act to be "quite clear," explaining "an action in tort alleging a wrong done by the association or by an agent or employee of the association, or an action arising from a contract made by or on behalf of the association, is to be brought against the condominium association." *Johnson v. OYR Realty Partners LP*, No. 14-4630, 2015 WL 7733544, at *6 (E.D. Pa. Dec. 1, 2015).

[133] 68 Pa. Cons. Stat. § 3311(a)(2)(i)–(ii).

[134] ECF 26 at 28.

[135] ECF 29 at 10.

[136] *Id*.

[137] *Id*. at 10–11.

[138] ECF 25 ¶ 135.

[139] ECF 26 at 30.

[140] ECF 29 at 11.

[141] *Id*.

25